UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FEDERAL TRADE COMMISSION,

Plaintiff, Case no. 8:24-cv-1459-JLB-AAS

vs.

LEGION MEDIA, LLC, KP COMMERCE, LLC, PINNACLE PAYMENTS, LLC, SLOAN HEALTH PRODUCTS, LLC, HARSHIL TOPIWALA, KIRTAN PATEL, and MANINDRA GARG,

Defendants.
_____________________________________________/

**RECEIVER'S VERIFIED RESPONSE IN OPPOSITION TO GARG'S MOTION FOR PROTECTIVE ORDER**

MARK J. BERNET (the "Receiver"), as receiver for Legion Media, LLC, et al. (the "Receivership Companies") responds to the *Defendant, Manindra Garg's Motion for Protective Order* (doc. no. 131). For the reasons stated below, the motion should be denied.

SUMMARY OF OPPOSITION

Garg opposes the Receiver's records subpoena to Pharma because he claims it does not seek relevant information. However, the Court has directed the Receiver to maximize the value of the assets of the receivership estate and liquidate them. The actions of third parties in violation of no-compete and non-solicitation contracts, with Garg's participation, negatively

impact the Receiver as he strives to comply with the Court's orders. The Court has specifically authorized the Receiver to issue records subpoenas seeking documents "pertaining to the Receivership." A confidentiality order, providing that the Receiver could utilize none of the documents produced under the subpoena absent the consent of the parties or a court order, would adequately address Garg's concerns.

MEMORANDUM

Garg engaged in a massive consumer fraud that damaged consumers by close to $300 million. Garg reached a settlement with the Plaintiff, and while he did not admit any liability, or that he did any of the things that prompted the Plaintiff to bring this lawsuit, he agreed (and the Court has so ordered) that he should be permanently enjoined from the actions of which he was accused. He also agreed to a $30 million judgment and to forfeit his interest in most of his assets, including without limitation his ownership interests in the Receivership Entities Sloan Health Products, LLC, F & B Cosmetics, LLC, and H & M Distribution, LLC (the "Garg Receivership Entities").

In the void created by Garg's removal from the Garg Receivership Entities, the Court installed the Receiver and directed him to manage the companies and liquidate them for the benefit of the consumers who were defrauded by reason of the acts identified by the Plaintiff. The Receiver has

proceeded as the Court has directed and is preparing the Garg Receivership Companies for sale.

To receive the best possible price for the Garg Receivership Companies as going concerns, the Receiver is pursuing a strategy of maximizing their earnings and earnings potential. However Garg, with the assistance of his ex-spouse Patricia Ohab and a formulation chemist named Paul Bobrowski, utilized the facilities and resources of a South Florida nutraceutical manufacturer, Pharma-Natural, Inc. ("Pharma"), to solicit some of the existing customers of the Garg Receivership Entities. While the Court's orders do not technically prohibit Garg from competing with the Garg Receivership Entities, Ohab and Bobrowski (both of whom are former employees of the Garg Receivership Entities) are precluded from doing so by non-compete and non-solicitation agreements. To investigate the violations of the non-compete and non-solicitation agreements, with an eye toward protecting the Garg Receivership Entities' rights thereunder, the Receiver served a records subpoena upon Pharma seeking documents relating to its relationship with Garg, Ohab and Bobrowski, at least insofar as they are competing or attempting to compete with the Receivership entities.

Garg challenges the subpoena solely on relevance grounds, arguing that because the Plaintiff's case against him is concluded, the subpoena seeks records that are "beyond the scope of the claims and defenses in this case."

Essentially, he argues that due to his settlement with the Plaintiff there are no open issues, and that discovery by the Receiver cannot proceed. This misses the point of the Court's rulings, specifically, and of receiverships generally. The Court has directed the Receiver to maximize the recovery from the receivership estate and given him tools necessary to perform his job. Garg's efforts to frustrate this should not be permitted.

## I. BACKGROUND

The Receiver submits the following as a complete recitation of the relevant procedural background:

On June 17, 2024, the Plaintiff filed this lawsuit alleging that the Defendants' businesses operated in violation of various provisions of federal law, including:

- Section 5 of the FTC Act (prohibiting unfair or deceptive acts or practices in or affecting commerce);
- Sections 3 and 4 of the Restore Online Shoppers' Confidence Act (prohibiting merchants from charging consumers for goods or services sold in internet transactions through a "negative option" feature absent specific material disclosures and the consumers' express consent); and
- The Electronic Fund Transfer Act and associated Regulation E (prohibiting preauthorized transfers of funds from consumers' accounts without consumers' express written authorization).

On June 18, 2024, the Court entered its *Ex-Parte Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction should not Issue* (doc. no. 17) that, among other things, enjoined all of the Defendants from any

business activities that violated any of the federal laws and rules mentioned above. The TRO also appointed Mark J. Bernet as Temporary Receiver to take control of the Company Defendants to examine their business practices and suspend their business operations unless he determined they could be continued legally and profitably. TRO, Section XIV.T (page 25).

The Receiver concluded that each of the non-parties Black Window Group, LLC, F & B Cosmetics, LLC, Face and Body, LLC, H & M Distribution, LLC, HK Distribution, LLC, and Larchwood Distribution, LLC (i) was intimately involved with the sale or distribution of products with a Negative Option Feature, and (ii) was controlled or owned by one or more of the Defendants. Under Section XIV.U of the TRO (page 25), the Receiver determined that each of those non-parties was a "Receivership Entity" and therefore under the Receiver's control, such determination having been noticed to all of the Defendants during June and July 2024. The Court's TRO authorized any party to challenge the Receiver's determination, but no party has done so.

Under three separate orders imposing permanent injunctions, monetary judgments and other relief (doc nos. 97, 98 & 99) (collectively the "Judgments"), each entered on September 16, 2024, the Court approved settlements between the Plaintiff and the Defendants and entered judgments in favor of the

Plaintiff. The Court's Judgments also continued the receivership and imposed various additional duties upon the Receiver.

By its February 12, 2025 Text Order (doc. no. 118), the Court granted the *Receiver's Motion to Extend Receivership and Confirm Receivership Authority* (doc. no. 114), and thereby extended the receivership through August 12, 2025 (subject to possible extensions). The Court also confirmed that the Receiver retained the same powers as had been granted under the Court's TRO. This included the power to issue records subpoenas.

A. PATRICIA OHAB AND PAUL BOBROWSKI

The Garg Receivership Entities have continued to operate under the Receiver's authority since his appointment in June 2024.[1] In this regard, the Receiver functions as the companies' CEO and makes business decisions he deems to be in their best interests. Among the Receiver's many business decisions, he determined to terminate the Garg Receivership Entities' employment relationships with Patricia "Trish" Ohab and Paul Bobrowski. Ms. Ohab, who is Garg's former spouse, was functioning as a purchasing manager, while Bobrowski was a formulation chemist. Both signed non-compete/non-solicitation agreements:

[1] A thorough discussion of the Garg Receivership Entities' business operations and the Receiver's role since his appointment is set forth in the *Receiver's Third Interim Report, Concerning Preparing the Sloan Receivership Companies for Sale* (doc. no. 133).

1. Trish Ohab. Ms. Ohab originally worked for Sloan and F & B in Tampa, but moved to Ontario, Canada during her divorce from Garg. She held the title of Senior Vice President of Operations but functionally she worked as a purchasing manager, and her $144,000 annual salary was excessive for the role she filled. Ms. Ohab signed employment agreements with Sloan and F & B (Composite Exhibit "1"), both of which (i) prohibited her from disclosing Confidential Information to any other person, (ii) provided that she could not "form or start, alone or with others, any business that is similar to or in competition with [Sloan's and F & B's] business," and (iii) prohibited her from contacting, soliciting or requesting that any customers of Sloan or F & B, or their affiliates, to curtail or cancel their business with Sloan or F & B. The term of these non-solicitation/non-compete provisions extended for two years from termination of Ms. Ohab's employment. The Receiver terminated her employment in November 2024.

2. Paul Bobrowski. Mr. Bobrowski worked for Sloan as a formulation chemist with the official title of Director of Research and Development, Dietary Supplements. Mr. Bobrowski signed an employment agreement with Sloan (Exhibit "2"), which (i) prohibited him from disclosing Confidential Information to any other person, (ii) provided that he could not "form or start, alone or with others, any business that is similar to or in competition with [Sloan's] business," and (iii) prohibited him from contacting,

soliciting or requesting that any customers of Sloan, or its affiliates, to curtail or cancel their business with Sloan. The term of these non-solicitation provisions extended for two years after termination of Mr. Bobrowski's employment. The Receiver terminated Mr. Bobrowski's employment effective August 9, 2024.

B. VIOLATIONS OF THE NON-SOLICITATION AND NON-COMPETE AGREEMENTS

Following Ms. Ohab's termination, the Receiver discovered that she breached her Non-Compete Agreements by soliciting the Garg Receivership Entities' customers and employees, and by starting a new company to engage in direct competition with Sloan. Specifically, on September 9, 2024, while Ms. Ohab was still employed with the Garg Receivership Entities, she incorporated a business called Toro Natural Labs, Ltd. in Ontario, Canada, and listed herself as the sole Director who owned more than 75% of the shares, and further disclosed that she exercised significant control over the corporation. Ms. Ohab listed the registered office address for Toro as the same address as her personal residence.

On November 19, 2024, a quality assurance manager named Rosa Solis with Pharma, a manufacturer of nutraceuticals such as vitamins, supplements, and skin care products among many other products, sent an email to Mr. Bobrowski and other recipients, including Ms. Ohab at

Office@torolabsltd.com, which stated "Hi Paul, We are waiting for your Approval in the Formulas: BK3742, BK3746 and BK3747." Ms. Solis mistakenly sent the e-mail to Mr. Bobrowski's e-mail address at Sloan, even though his employment had been terminated months earlier.

Attached to the email from Ms. Solis were three "Master Formula Approval Forms" for bromelain, an enzyme supplement labeled BK3742; a male enhancement supplement labeled BK3746; and a urinary incontinence supplement labeled BK3747. The "client" on each of the Master Formula Approval Forms was listed as "Toro Labs, Ltd.," which is a predecessor to "Toro Natural Labs, Ltd." and which also is owned by Ms. Ohab. The customer on whose behalf Toro was producing the bromelain was listed on the Master Formula Approval Form labeled BK3742 as "UPEXI-VM," which is a reference to UPEXI, Inc., and its subsidiary, Vitametica, Inc ("Vitametica").[2]

While Ms. Ohab was still employed by Sloan and as of November 2024, Vitametica was a current customer of Sloan's for which Sloan produced bromelain. Sloan used Pharma to manufacture the bromelain for Vitametica. Sloan also produced the urinary incontinence and male enhancement supplements which Ms. Ohab's company, Toro, contracted with Pharma to

[2] In his motion, Garg refers to a company called "Vitamedica." The Receiver believes that this is the same company actually known as "Vitametica."

produce for it.[3] Sloan also used Pharma to produce urinary incontinence and male enhancement supplements for it. Ohab had access to all of Sloan's confidential, proprietary information relating to these products while she was employed by the Garg Receivership Entities.

The formulas for the bromelain, urinary incontinence and male enhancement supplements contained in the Master Formula Approval Forms were very similar to the formulas Sloan used for those same three products. Mr. Bobrowski, as a formulation chemist, was working with Ms. Ohab and Toro to provide a formula to Pharma, so that Pharma could manufacture these products and so that Ms. Ohab and Toro could sell them to Vitametica.

During this same period of time, Garg had actively sought to find investors, possibly even himself, to invest money into Pharma. As part of this process Pharma permitted Garg to take over its operations and function as, essentially, its production manager.[4] The Receiver has reason to believe that Garg supervised and directed Pharma's manufacturing of the bromelain, urinary incontinence and male enhancement supplements that Toro, through Ms. Ohab, subsequently sold to Vitametica.

---

[3] Toro's website trumpeted its "state of the art manufacturing facility." The address for this supposed "manufacturing facility" is Pharma's address in Miami Lakes. There is no evidence, however, that Toro owns any interest in Pharma.

[4] The Receiver understands that in mid-April Pharma fired Garg and directed him to leave its facility due to mismanagement and his abusive personality. The Receiver further understands that Pharma also has severed its relationship with Ms. Ohab and Toro.

C. THE RECEIVER'S SUBPOENA TO PHARMA

As noted in the Receiver's Third Interim Report, the Court has charged the Receiver with liquidating the assets of the receivership estate to realize the best possible value for the consumers injured by reason of the fraud that caused the Plaintiff to bring this lawsuit. Among the assets to be sold are the three Garg Receivership Entities, which the Receiver is attempting to sell as going concerns. To maximize their value, the Receiver needs to demonstrate the highest possible Enterprise Value, which in turn requires the Receiver to maximize and expand the revenues the companies generate. Having customers and revenues siphoned off by former employees in violation of no-compete and non-solicitation agreements is not consistent with this mission.

When the Receiver learned that Ms. Ohab, with the assistance of Mr. Bobrowski and Garg, was soliciting the Garg Receivership Entities' customers, he prepared and served a records subpoena to Pharma. The documents within the scope of the subpoena are described with reasonable accuracy in Garg's motion; in essence, the Receiver is looking for documents relating to Pharma's role, with Ms. Ohab and her company Toro, and Mr. Bobrowski, in soliciting the Garg Receivership entities' customers within the time period prohibited by the no-compete and non-solicitation agreements. A

copy of the subpoena is attached as Exhibit "3."[5] Pharma's response was due on Friday, April 16, 2025, but it failed to respond.[6] The Receiver will satisfy his Local Rule 3.01(g) obligations prior to asking for the Court's involvement as against Pharma.

## II. ARGUMENT

Garg opposes Pharma's production of any documents whatsoever relating to Garg in any fashion. According to Garg, the subpoena seeks documents that are not relevant in this case, and amount to nothing more than a "fishing expedition." Garg has refused the Receiver's offer of a confidentiality order, insisting instead that whatever documents Pharma has that relate to Garg in any fashion, including his participation with Ms. Ohab and Mr.

---

[5] The Receiver has reason to believe that Ms. Ohab, and her company, Toro, have solicited other customers of the Garg Receivership Entities. Garg's attorneys have demanded that the Receiver identify these customers, but the Receiver believes that Garg is trying to ascertain how much the Receiver knows so that it can craft its responses by refusing to identify information that the Receiver may not already know. The Receiver accordingly declines to identify all of the information he possesses on this subject at this time, and instead insists that Garg and Pharma should fully, completely and accurately provide documents in response to the subpoena.

[6] An attorney for Ms. Ohab and Toro contacted the Receiver on May 12, 2025, concerning the subpoena. That attorney, Brian Reilly, formerly represented Sloan in several matters, including drafting Bobrowski's employment agreement (which is very similar to Ms. Ohab's employment agreement). Based on the invoices sent to Sloan, Reilly also appears to have been heavily involved with credit card processors, and with a non-party company called CRA Holdings WY LLC, a Wyoming limited liability company ostensibly owned by Garg's current spouse, Chloe R. Arias, which was a predecessor to KP Commerce and which appears to have engaged in the same fraudulent conduct. The Receiver believes that Reilly cannot represent Ms. Ohab or Toro adverse to the Garg Receivership Entities, and Reilly apparently agrees because he did not file any objection or other materials prior to the May 16, 2025 deadline.

Bobrowski in improperly soliciting the Garg Receivership Entities' customers, are irrelevant and off limits. The Receiver respectfully disagrees.

District courts have broad powers and wide discretion to determine relief in an equity receivership. *SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992). The Receiver's mission, as directed by the Court, is to enhance the value of the receivership estate. Concepts of "relevance" under Rule 26 therefore must be viewed in that context, if Rule 26 even applies under these circumstances. The Receiver is working toward selling the Garg Receivership Entities, and to maximize their value he must show potential purchasers that the companies are generating as much revenue as possible.

Rule 26(b)(1) defines the scope of permitted discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Thus, discovery is proper if it pertains to any "claim or defense . . . considering the importance of the issues at stake in the action, the amount in controversy, [and] the parties' relative access to relevant information." The documents requested pertain to an extremely important open issue, namely, the Court's

direction to the Receiver to enhance the value of the receivership estate so that injured consumers can receive a respectable return to apply to the damages they suffered. Those damages are not insignificant; tax returns for the various Receivership Entities (including the Legion Receivership Entities) demonstrate that they generated revenues, mostly illicitly, of approximately $300 million from 2021 through June 2024 through the scams described in the Complaint.

Garg continues to operate under the illusion that this case is "finished" because the Court approved his settlement with the Plaintiff and imposed a permanent injunction against him, a $30 million judgment and the forfeiture of most of his property, including his interests in the Garg Receivership Entities. This argument, however, proves too much; if the Court were to accept Garg's position that the case is over, then the Receiver would be unable to serve any records subpoenas, or conduct any discovery whatsoever. But this is not what the Court has done.

In its February 12, 2025 Text Order (doc. no. 118), the Court granted the *Receiver's Motion to Extend Receivership and Confirm Receivership Authority* (doc. no. 114), and confirmed that the Receiver retained the same powers as had been granted under the Court's TRO. Among those powers originally granted to the Receiver, and then confirmed some five months after the Court entered its Judgment against Garg, is the power to "[i]ssue subpoenas to obtain

Documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the receivership estate. . . ." TRO, Section XV.N (page 24).[7] The Court did not limit the Receiver's subpoena power to open issues in the Plaintiff's case against the Defendant, as Garg urges, and for this reason Rule 26 either should be held not to apply, or to apply broadly enough to allow the Receiver to seek records directly relevant to the Receiver's court-ordered mission.

Certainly, actions in violation of contracts that impact and detract from the Receiver's efforts to maximize the value of the assets in the receivership estate are "relevant." The Receiver simply cannot sit by and allow revenues to melt away because one of the litigants, who is involved in the melting, claims that his settlement with the Plaintiff "ended the litigation." The Receiver is duty-bound to put a stop to this, and to use the tools provided by the Court to do so.

During the Rule 3.01(g) conference, the Receiver suggested to Garg that the parties ask the Court to enter a confidentiality order that would declare that (i) all documents produced by Pharma in response to the records subpoena

[7] Section XXV of the TRO (page 34) also authorized the Receiver to conduct discovery "for the purpose of discovering . . . (2) the nature, location, and extent of Defendants' business transactions and operations [and] (3) Documents reflecting Defendants' business transactions and operations." Section XXV authorizes the Receiver to demand document productions within five days, although in the case of Pharma the Receiver purposely chose to grant it 30 days to respond.

be deemed confidential, and (ii) the Receiver could not use any of those documents absent the consent of the affected parties or a court order. Garg's attorneys did not address the Receiver's proposal, but the Receiver submits that it would adequately address whatever concerns Garg may have. The Receiver is prepared to submit a proposed confidentiality order, if so directed by the Court.

III. CONCLUSION

For the foregoing reasons, Garg's motion must be denied.

VERIFICATION

The Receiver certifies that the factual statements contained herein are true and complete to the best of his information, knowledge and belief.

*/s/ Mark J. Bernet*
Mark J. Bernet, Receiver
Florida Bar No. 606359
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
T: (813) 223-7333
F: (813) 223-2837
E-mail: mark.bernet@akerman.com
Secondary: caren.deruiter@akerman.com

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served by via e-mail to: Darren H. Lubetzky, Esquire, e-mail dlubetzky@ftc.gov; Karen Dahlberg O'Connell, Esquire, e-mail koconnell@ftc.gov; Vikram Jagadish, Esquire, e-mail vjagadish@ftc.gov; James E. Felman, Esquire, e-mail JFelman@kmf-law.com; Katherine E. Yanes, Esquire, e-mail KYanes@kmf-law.com; Janelly Crespo, Esquire, janelly.crespo@dlapiper.com; Michael R. Carey, Esquire, e-mail mcarey@careyomalley.com, amorgan@careyomalley.com; Eric Forni, Esquire, e-mail eric.forni@us.dlapiper.com; David Stier, Esquire, e-mail david.stier@us.dlapiper.com; Austin Brown, Esquire, e-mail austin.brown@dlapiper.com; Constantine Economides, Esquire, ceconomides@dynamisllp.com; Eric S. Rosen, Esquire, e-mail erosen@dynamisllp.com, Robert K. Tucker, II, Esquire, e-mail rtucker@grsm.com and mbperez@grsm.com; Stephen R. Freeland, Esquire, e-mail sfreeland@grsm.com; and Aliza Malouf, Esquire, Aliza.malouf@gmlaw.com, this 23rd day of May, 2025.

*/s/ Mark J. Bernet*
Mark J. Bernet, Receiver