UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FEDERAL TRADE COMMISSION,

        Plaintiff,                       Case no. 8:24-cv-1459-JLB-AAS

vs.

LEGION MEDIA, LLC, et al.,

        Defendants.
_____/

**UNOPPOSED MOTION TO EXTEND RECEIVERSHIP
THROUGH SEPTEMBER 30, 2026**

MARK J. BERNET, as receiver for Legion Media, LLC, et al., moves the Court for entry of an order extending the receivership through September 30, 2026, subject to possible further extensions for good cause. The requested extension will allow the Receiver sufficient time to generate a financial track record that will allow him to address concerns raised by potential purchasers of the Sloan Receivership Companies. The Receiver reports that the relief is supported, or at least not opposed, by all parties herein.

In support of his agreed motion the Receiver submits the accompanying memorandum.

## SUMMARY

The Receiver's principal remaining task is to sell the Sloan Receivership Companies for the benefit of consumers injured by reason of the Defendants' unlawful acts. The Sloan Receivership Companies were distressed when the Receiver took control, and so the Receiver designed and implemented business turnaround strategies to address deficiencies in their accounting and operational systems and to replace revenues historically derived from the Defendants' unlawful sales practices. The Receiver's strategies are in full swing and the companies now are operated legally and profitably.

The Sloan Receivership Companies are listed for sale as going concerns, but the Receiver does not presently have a buyer. The Receiver has obtained two offers and several "expressions of interest," but none has fairly valued the companies because potential purchasers are reluctant to make a reasonable offer without additional financial information. By continuing to operate for another six months, the Receiver will generate financial results for Q1 & Q2 of 2026. This in turn will create a longer, better history of financial success to support an appropriate sale price from potential purchasers. After the conclusion of Q2 2026 the Receiver would

> require all interested parties to submit their best offers – in essence, an auction. Q3 2026 then would be devoted to closing on the sale.

## I. PROCEDURAL BACKGROUND

The background of this case is set forth in the *Receiver's Third Interim Report, Concerning Preparing the Sloan Receivership Entities for Sale* (doc. no. 133) ("Third Interim Report"), which is incorporated herein by this reference. However, as discussed below, since the time he filed the Third Interim Report the Receiver has made new findings and discoveries that require updates to that report. These updates are contained in this motion.

In its Text Order entered February 12, 2025 (doc. no. 118), and despite Garg's objections, the Court extended the receivership through August 12, 2025, subject to a possible extension for "good cause." The extension was based on the Receiver's report that he was in the process of preparing the Sloan Receivership Entities (Sloan Health Products, F & B Cosmetics, and H & M Distribution) to be sold as going concerns, and that he required additional time so that he could maximize the value to be received.

In its Text Order entered November 12, 2025 (doc. no. 159), the Court granted the Receiver's *Second Motion to Extend Receivership* (doc. no. 142), and thereby extended the receivership, over Garg's objections, through December 31, 2025.

## II.   STATUS OF SALE EFFORTS

The Receiver and his investment bankers, SC&H Capital, created an online electronic "data room" containing financial and other information that potential purchasers are likely to deem relevant as they evaluate a potential purchase. The Receiver and SC&H also created a "teaser" memorandum announcing that the companies were for sale and inviting potential purchasers to sign a non-disclosure agreement so that they could receive a Confidential Information Memorandum, or CIM, containing more detailed information.

SC&H provided the teaser to 269 targeted potential purchasers, of which 165 were deemed "strategic" buyers (companies already engaged, or contemplating becoming engaged, in a similar manufacturing business), while 104 were deemed "financial" buyers (companies looking to invest in any sort of business). Through December 7, 2025, 76 potential purchasers signed NDAs and received a copy of the CIM. Of those, 13 have been granted access to the data room. The Receiver and SC&H have participated in over a dozen meetings with these potential purchasers, most by video conference although the Receiver also personally met with five potential purchasers in Smyrna, Tennessee when potential purchasers toured the manufacturing facility.

Feedback from potential purchasers suggests that some are not comfortable with purchasing companies out of receivership because it is unusual for profitable, lawfully-operated manufacturing companies to be sold

out of receivership.[1] Purchasers also expressed discomfort with the companies' financial performance, in the sense that, while profitability is trending in the right direction, they have an insufficient track record for purchasers to accept that the positive momentum will continue.

Through December 15, 2025, two potential purchasers made formal offers, but both were at a price that the Receiver deemed insufficient. Five others remain interested and are contemplating making offers. Others advise that they remain interested but will wait for more financial information before committing resources to conducting due diligence.

### III.  DISCUSSION

The most prudent course of action at this point is to allow the Receiver to continue to operate the Sloan Receivership Entities through the end of the second quarter of 2026. The additional time will allow the Receiver to generate monthly financial reports for the companies through June 30, 2026, to post in the data room for review by interested potential purchasers. After the conclusion of Q2, the Receiver then would request written bids for the companies, to be submitted by the end of July 2026, and then select one by

---

[1] Companies in receivership typically are there due to financial mismanagement. This, of course, is not the reason that the Sloan Receivership Entities are in receivership. The Receiver and SC&H have explained that, while the Sloan Receivership Companies did in fact have financial pressures, they have little debt and are operating legally and profitably. Potential purchasers, however, want more data and a longer track record.

mid-August. Closing then could proceed, with the intent of completing a sale by September 30, 2026.

A. Two Additional Quarters Will Help to Establish a Track Record. Prior to the Receiver's appointment in June 2024 Sloan Health Products generated the bulk of its revenues by participating in the unlawful sales practices that are the subject of this lawsuit.[2] F & B was a start-up, having been created only in late 2023, and consequently did not have a lengthy track record. H & M Distribution, operated jointly by Garg and Topiwala, generated most of its revenues through the same unlawful consumer sales practices that caused this litigation,[3] but H & M also offered fulfillment services that the Receiver determined could be operated legally and profitably. The effect of all of this was that, as of the Receiver's appointment at the end of the second quarter of 2024, there was little to no useful historic financial information for any of the Sloan Receivership Companies pertaining to the business they began operating under the Receiver starting in Q3 2024.[4]

---

[2] Sloan generated the majority of its revenues through sales to the Receivership Entities KP Commerce, Pinnacle Payments, Larchwood Distribution and Black Window Group, all of which (i) were controlled by the Defendants Garg and/or Topiwala, and (ii) engaged in the unlawful sales tactics that are the subject of this lawsuit. Because the Court charged the Receiver with suspending the business operations of receivership entities unless they could be operated "legally and profitably," the Receiver had no choice other than to shut down the unlawful side of the Defendants' business enterprise. For Sloan, this resulted in the instant loss of 70 percent of its revenues.

[3] $10 million of the $12 million in 2024 revenues H & M generated prior to the Receiver's appointment in mid-2024 derived from unlawful consumer sales.

[4] Moreover, the financial records provided to the Receiver upon his appointment were facially erroneous and unreliable.

The Receiver devised turnaround strategies starting as of the end of Q3 2024, and then began implementing them.  These included re-vamping the accounting system, streamlining operations, hiring consultants to teach employees how to use existing software (including properly integrating data from the companies' Mar-Kov batching software to their QuickBooks accounting software), reviewing and adjusting pricing policies,[5] restructuring various departments, and implementing programs to obtain necessary certifications.  The Receiver now has devised and implemented the bulk of his turnaround strategies, and the companies are operating legally and profitably.

Purchasers typically value companies by multiplying the companies' EBITDA (Earnings Before Interest, Taxes, Depreciation and Amortization) by a multiple.  The Sloan Receivership Companies have projected their EBITDA to increase steadily over the next several quarters, and they are on their way to achieving these projections.  Despite the positive trends, potential purchasers are taking a "wait and see" approach.  Purchasers claim to need a longer history of success before they are willing to (i) accept the

---

[5] Prior to this lawsuit Sloan and F & B sold products to some legitimate, institutional customers at a loss.  This was because the companies did not know how to price their products and because their unlawfully generated revenues were more than sufficient to cover the losses.  Because the Court charged the Receiver with operating the companies legally and profitably, the practice of selling at a loss had to cease because there were no more unlawful revenues to subsidize legitimate sales.

companies' revenue/EBITDA projections, and (ii) afford a multiple that the Receiver deems appropriate.

Ideally, the Sloan Receivership Companies should be permitted to operate in receivership through at least December 31, 2026, to establish a years' worth of financial data after the turnaround strategies have taken effect. The Receiver, however, is mindful that the Court may not be inclined to allow the receivership to continue for that long. Accordingly, the Receiver requests that the Court authorize the Receiver to continue to operate the Sloan Receivership Companies for six months through the end of Q2 2026, report the financial results into the data room, advise all potential purchasers that their best offer must be made by July 31, 2026, and then close on a sale by September 30, 2026.[6]

B. <u>Extending the Receivership will not Prejudice any of the Parties Unfairly</u>. The Receiver has made the point previously that Garg, Topiwala and the other Defendants all have surrendered their interests in the Sloan Receivership Companies through their agreed final judgments, and that as a result they have no standing to contest the receivership. The FTC is the sole stakeholder for the receivership because the money received from a sale of

---

[6] Under this scenario nothing would prevent a potential purchaser from making an offer prior to the end of Q2 2026; if the Receiver obtains a good offer he likely would accept it (subject to court approval), regardless of when received.

the Sloan Receivership Companies will be paid to it. The FTC advises that it does not oppose the requested extension.

Garg pointed out previously that because of the structure of the Sloan Receivership Companies he faces potential federal income tax liability for the taxable income the companies generate, even though it is not paid to him.[7] Garg objected to being subject to paying tax on "phantom income" for which he is legally responsible but which he does not receive. However, the parties now have addressed this through an agreement which will be presented to the Court for approval in the near term. In broad strokes, that agreement provides in relevant part that the Receiver will treat the Sloan Receivership Companies as "Qualified Settlement Funds" as defined at 26 CFR §1.468B-1. The effect likely will be that taxable income generated by the Sloan Receivership Companies will be contributed to a QSF, with the Sloan Receivership Companies then being entitled to claim a deduction for the amount contributed. This likely could limit or eliminate the "phantom income" about which Garg previously had complained, leaving him with little or no

---

[7] Sloan made a Subchapter S election when Garg formed it, which means that its taxable income flows through it to its owner (Garg). Garg structured F & B as a single-member limited liability company that is a disregarded entity for tax purposes, with the result being that taxable income F & B generates is attributed to its owner (again, Garg). H & M is structured as a partnership; it pays no tax on its income, but instead it issues IRS form K-1s showing that its taxable income is attributed to its two owners (Garg and either Topiwala or one of his companies).

federal income tax liability.[8]  In reliance upon this, Garg supports the Receiver's requested extension of the receivership.

The other Individual Defendants – Topiwala and Patel – have no stake in the motion or the receivership because, like Garg, they surrendered all claim to the receivership assets in their agreed final judgments.  Moreover, neither is an "owner" of any of the Sloan Receivership Companies, and consequently neither has tax exposure for "phantom income" from the companies.  Both advise that they have no position on the Receiver's requested extension.

C. <u>Other Considerations</u>.  Consumer redress in this case is paramount.  The Defendants engaged in a massive consumer fraud, from which they generated approximately $300 million.  The Receiver is attempting to maximize the amount of money to be made available for the defrauded consumers, and in his business judgment the requested extension is necessary and appropriate to accomplish this.  Certainly, complaints about potential increased tax exposure pale in comparison.

---

[8] It is not clear whether the IRS will accept this because a QSF is designed as a settlement fund and ordinarily not used in connection with operating companies, although the Receiver's tax accountants believe that the IRS will accept the Receiver's position.  Also, by filing a QSF return the Sloan Receivership Companies would need to pay their taxable income into a segregated QSF account, which could affect the companies' ability to use the cash in their operations.

The Sloan Receivership Companies are defendants in two legal proceedings pending in Ontario, Canada, in which two former employees are seeking damages for wrongful termination. The Sloan Receivership Companies also are co-plaintiffs in a lawsuit pending in federal court in Nashville against a former employee, seeking to enforce a no-compete agreement. None of the lawsuits projects to be completed within the next year. Terminating the receivership prior to the time these lawsuits are completed will prejudice the Sloan Receivership Companies substantially.

The Sloan Receivership Companies are required by statute to file federal and state tax returns for the 2025 tax year. *See* 26 U.S.C. §6012. The extended due date for filing is September 15, 2026. Because the Receiver is statutorily required to file these returns, the receivership will need to be extended so that the returns can be filed.

Finally, the Receiver notes that he is functioning as the CEO of the Sloan Receivership Companies. Terminating the receivership now will leave the companies rudderless and place the jobs of the companies' 90+ employees at risk. Again, the Defendants' potential tax exposure is outweighed by the needs of the companies' employees and their families.

IV.   CONCLUSION

Although the Sloan Receivership Companies have been marketed for sale for the past several months the Receiver has received only two offers, both

of which he deemed unacceptable in his business judgment. He does not presently have an offer from any other potential purchaser. The primary issue from potential purchasers is that, while the companies now are operating legally and profitably, they have an insufficient track record of performance to entice potential purchasers to make offers that the Receiver deems reasonable.

To remedy this, the Receiver seeks to extend the receivership so that he can operate the companies through June 30, 2026. This would allow an additional six months of actual, operational performance that, hopefully, will establish the financial history that potential purchasers are requiring. After June 30, 2026, the Receiver would require all potential purchasers to make their best offers for the companies. The Receiver would select the highest and best offer, and the transaction could target a closing date for prior to September 30, 2026. Nothing, however, would preclude the Receiver from accepting a good offer made earlier (subject to Court approval).

## ORAL ARGUMENT

The Receiver invites the Court to schedule a hearing on this motion, if it believes oral argument would be helpful. The Receiver estimates that the issues raised herein could be discussed to finality in one hour.

LOCAL RULE 3.01(g) CERTIFICATION

The Receiver certifies that prior to filing this motion he consulted with all the parties herein. The Receiver reports that all parties either support the motion or do not oppose it. The motion therefore is not opposed.

WHEREFORE, the Receiver requests that the Court enter an order extending the receivership for nine months, through September 30, 2026, and directing the Receiver to comply with the timeline set forth herein.

*/s/ Mark J. Bernet*
Mark J. Bernet, Receiver
Florida Bar No. 606359
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
T: (813) 223-7333
F: (813) 223-2837
E-mail: mark.bernet@akerman.com
Secondary: caren.deruiter@akerman.com
Secondary: sal.papsidero@akerman.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served by CM/ECF and via e-mail to Darren Lubetzky, Esquire, e-mail dlubetzky@ftc.gov, Vikram Jagadish, Esquire, e-mail vjagadish@ftc.gov, and via e-mail to Stephen R. Freeland, Esquire, sfreeland@grsm.com; Jim Felman, Esquire, e-mail JFelman@kmf-law.com; Michael Carey, Esquire, mcarey@careyomalley.com; Eric Forni, Esquire, e-mail Eric.forni@us.dlapiper.com; David Stier, Esquire, **e-mail** David.Stier@us.dlapiper.com and Eric S. Rosen, Esquire, e-mail erosen@dynamisllp.com, this 30th day of December, 2025.

*/s/ Mark J. Bernet*
Mark J. Bernet, Receiver

84880471;1