UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FEDERAL TRADE COMMISSION,

               Plaintiff,               Case no. 8:24-cv-1459-JLB-AAS

vs.

LEGION MEDIA, LLC, et al.,

               Defendants.

_____/

### RECEIVER'S VERIFIED FIRST APPLICATION FOR AUTHORITY TO PAY FOR LEGAL SERVICES RENDERED AND COSTS INCURRED BY DICKINSON WRIGHT PLLC

Mark J. Bernet (the "Receiver"), as receiver for Sloan Health Products, LLC and F & B Cosmetics, LLC, files his first application for payment for services rendered and reimbursement for costs incurred by the law firm of Dickinson Wright PLLC ("Dickinson"). The Receiver requests authority to pay Dickinson $128,379.00 as fees for services rendered in three separate litigation matters during the period beginning January 7, 2025, and continuing through November 30, 2025 (the "First Interim Fee Period"). The Receiver also requests authority to reimburse Dickinson $838.97 for costs incurred during the First Interim Fee Period. Finally, the Receiver seeks authority to pay $1,870.44 as a sales tax levied on legal

services for lawsuits pending in Ontario, Canada.  The Receiver has already paid $42,000 as retainers for the three matters, which will be credited to the total amount awarded by the Court hereunder.  **The relief requested herein is not opposed.**

The Receiver submits the following in support of this application.

SUMMARY OF FEE APPLICATION

Dickinson has provided legal services to the receivership estate in three separate litigation matters.  The Receiver seeks authority to pay Dickinson the following amounts:

- For a matter filed against the Receivership Entity Sloan Health Products in Canada by a former Sloan employee, the Receiver seeks authority to pay $10,240.50 in fees, $230.40 in costs, and $1,361.21 in Canadian sales taxes;

- For a second matter filed against Sloan in Canada by a second former Sloan employee, the Receiver seeks authority to pay $3,713.50 in fees, $203.57 in costs, and $509.23 in Canadian sales taxes; and

- For a matter filed by Sloan and F & B Cosmetics in federal court in Nashville, Tennessee, the Receiver seeks authority to pay $114,425.00 in fees and $405.00 in costs.

I.       INTRODUCTION

    A.       The Relief Requested

       1.       By this First Interim Fee Application the Receiver requests authority to pay Dickinson $128,379.00 for its services rendered during the First Interim Fee Period as litigation counsel for the Receiver in three separate matters.   The Receiver also requests authority to pay Dickinson $838.97 as reimbursable expenses, and to pay a Canadian sales tax levied on legal services of $1,870.44.  To the fees and costs awarded by the Court, the Receiver would apply the $42,000 retainer already paid.

       2.       During the First Interim Fee Period the Receiver tried to perform much of the required legal work for the Receivership Entities himself.  However, lawsuits involving former employees required the Receiver to engage outside counsel to handle litigation matters in Ontario, Canada, and Nashville, Tennessee.

       3.       The services rendered by Dickinson during the First Interim Fee Period are discussed in greater detail in Section II below. Additionally, the Receiver has filed Dickinson's invoices describing the legal work provided and including a detailed billing log of the time recorded by Dickinson's attorneys, in tenths-of-an-hour increments.  *See* Exhibit "A" (for the two Canadian Lawsuits) and Exhibit "B" (for the Tennessee Case).

3

4.      All of the services for which the Receiver requests authority to pay Dickinson were rendered solely in connection with this case and solely at the request of the Receiver.  All of the services that are the subject hereof were rendered during the First Interim Fee Period.

5.      The Receiver paid Dickinson a $25,000 retainer when he retained it and later paid a second retainer of $17,000, for a total of $42,000.  That amount will be credited to the total fee and costs awarded. Dickinson has agreed to wait for a Court order before taking payment.  This is the Receiver's first request for authority to pay Dickinson.

6.      Dickinson respectfully submits, in light of the difficult and complex nature of the three litigation matters, that the requested compensation for Dickinson is reasonable.

B.      The Background of the Case.

The background of this case is set forth in the *Receiver's Third Interim Report, Concerning Preparing the Sloan Receivership Companies for Sale* (doc. no. 133), which is incorporated herein by this reference.

II.      DESCRIPTION OF SERVICES RENDERED

The Court directed the Receiver to suspend the business operations of the Receivership Entities unless he determined that he could operate them "legally and profitably."  Most of the Receivership Entities could not

4

be operated "legally and profitably," except that, the Receiver determined that, with changes, he could operate Sloan and F & B "legally and profitably" and thereby enhance their value when sold as going concerns. Keeping the companies open also saved the jobs of over 100 employees.

As of the Receiver's appointment the Defendant Garg was in control of Sloan and F & B.  His former spouse, Patricia Ohab, held the title "VP of Operations" for both companies, although in practice she was in charge only of the purchasing department (which purchased raw materials the companies used to manufacture their products).  Ohab's romantic interest, Bradley Colbron, also worked for Sloan and F & B as a junior purchasing manager.  The companies employees complained to the Receiver about Ohab's performance and behavior, and the Receiver also had concerns that she regularly provided confidential information to Garg that he could use to compete with Sloan and F & B.  Additionally, the Receiver determined that Colbron did not provide any value to the companies.  The Receiver terminated Colbron's employment in October 2024,[1] and in November 2024 the Receiver terminated Ohab's employment.

---

[1] At the time Sloan and F & B employed two junior purchasing managers.  The Receiver asked Ohab to decide which of the two should be let go.  Ohab chose Colbron.

Both Colbron and Ohab were Canadian citizens residing in Toronto. After the Receiver terminated their employment he confirmed that, while still employed by Sloan and F & B, Ohab created a Canadian company, Toro Natural Labs, which she used to solicit customers from Sloan and F & B, using confidential information she obtained while employed by those companies. The Receiver also discovered that Ohab was working with Garg and a third-party manufacturer, Pharma Natural out of Miami, in connection with soliciting these customers.

Ohab was and is subject to a written non-competition and non-solicitation agreement that forbids her from competing with Sloan or F & B. The same contract also prohibits her from soliciting the customers or employees of Sloan and F & B. Garg knew this, because Ohab signed the agreement while he was still in control. Despite his knowledge, he worked with her to do precisely what she had contractually agreed not to do.

To protect Sloan and F & B from Garg and Ohab poaching their customers, the Receiver hired Dickinson to file suit to enforce Ohab's non-competition and non-solicitation agreement. While Dickinson was preparing that lawsuit, Colbron and Ohab filed lawsuits against Sloan, in Toronto, for wrongful termination. The Receiver hired Dickinson's Toronto office to handle those two lawsuits.

A.     The Colbron and Ohab Lawsuits in Toronto.  After Sloan and F & B terminated the employments of Colbron and Ohab, the companies prepared and sent them standard severance agreements containing releases in favor of the companies, in return for a small payment. Colbron accepted his severance payment.  Ohab did not accept hers.

In January 2024, Colbron and Ohab each filed separate lawsuits against Sloan and F & B in the Ontario Superior Court of Justice in Ontario, Canada (the "Canadian Lawsuits").   In both cases, the Claimants alleged that their employment had been terminated improperly in violation of Canadian law, and that as a result they claimed to be entitled to damages, including punitive damages.[2]

Sloan is defending the Canadian Lawsuits by asserting that, under this Court's rulings, all actions against Sloan are stayed. Additionally, after his termination Colbron accepted valuable consideration as his sole remedy.  Sloan also denies that Ohab was wrongfully dismissed

---

[2] Unlike in the United States, employers who terminate Canadian employees generally must provide the terminated employee with reasonable notice of termination or pay in lieu thereof.  "Reasonable notice" is determined based on the length of employment, as well as the employee's age, position and length of time it may take to obtain similar employment.  This is the case even if the employer has no operations in Canada, so long as the employee resides in Canada.  There are several exceptions to this, including if the termination is for "just cause."   Violating a non-competition and non-solicitation agreement may amount to "just cause."

and maintains she did not take reasonable steps to mitigate her alleged damages.

Dickinson recorded its time, along with a description of the services it rendered on the two Canadian Lawsuits.  *See* Exhibit "A."  Those invoices are summarized as follows:

THE OHAB LAWSUIT

| INVOICE DATE[3] | Hours | Total Fees |
|---|---|---|
| 03/08/2025 | 3.2 | $2,736.00 |
| 04/03/2025 | 2.9 | 2,479.50 |
| 05/06/2025 | 1.6 | 1,154.00 |
| 06/05/2025 | 0.6 | 513.00 |
| 07/03/2025 | 0.4 | 318.00 |
| 08/09/2025 | 0.8 | 684.00 |
| 10/07/2025 | 1.1 | 858.00 |
| 11/06/2025 | 3.4 | 1,498.00 |
| TOTAL | 14.0 | $10,240.50 |

THE COLBRON LAWSUIT

| INVOICE DATE | Hours | Total Fees |
|---|---|---|
| 03/06/2025 | 1.2 | 1,026.00 |
| 04/03/2025 | 2.1 | 1,795.50 |
| 05/06/2025 | 0.1 | 85.50 |
| 11/06/2025 | 2.5 | 806.50 |
| TOTAL | 5.9 | $3,713.50 |

---

[3] Invoice dates on the tables in the application utilize the American convention (month/date/year).

The Dickinson attorneys primarily handling the Canadian Lawsuits for Sloan and F & B are Wendy G. Hulton, Brian N. Radnoff and Renae E. Pennington.

- <u>Wendy G. Hulton</u> is a 1988 graduate of the Osgoode Hall Law School.  She has been admitted to the bar in Ontario for well over 30 years.  Her practice focuses on product regulation, and employment and business law.  A senior member of Dickinson's Canadian employment law group, Ms. Hulton has a diverse civil litigation practice which encompasses employment and business law, product liability and advocacy before all levels of Courts in Ontario including the Divisional Court and the Court of Appeal and before a variety of administrative tribunals and arbitrators.  Ms. Hulton has the distinction of being one of the few lawyers to recover an award of costs against Canada's Department of Health.

Ms. Hulton recorded a total of 10.9 hours on the two Canadian Lawsuits during the First Interim Fee Period (7.2 for the Ohab Case, 3.7 for the Colbron case).  At her hourly rate of $855 (which is not discounted), her total fees charged would be $9,319.50.

- <u>Brian Radnoff</u> practices a wide range of commercial litigation, both at the trial and appellate levels. He has significant experience in securities and shareholder litigation, defamation litigation,

professional liability, estate litigation, class actions, administrative law, competition litigation, employment litigation and insolvency and receiverships. He has handled large commercial disputes between significant companies, like Air Canada's corporate espionage litigation against WestJet, and smaller disputes involving individuals, like debt collection matters and property disputes. He has done jury trials. He has argued cases in the Ontario, Federal and BC courts, as well as the Supreme Court of Canada.

Mr. Radnoff recorded a total of 0.4 hours on the Ohab case during the First Interim Fee Period. At his hourly rate of $660, his total fees charged would be $264.00.

- <u>Renae E. Pennington</u> is a junior associate at Dickinson Wright's Toronto office, where she focuses her practice on labor and employment law. Ms. Pennington earned her J.D. from the University of Ottawa, where she was involved with the Canadian Internet Policy and Public Interest Clinic (CIPPIC) and served as a research and teaching assistant in public and constitutional law. She also contributed to legal policy initiatives at the Law Commission of Ontario and the Centre for Law, Technology and Society.

Ms. Pennington recorded a total of 4.4 hours on the two Canadian Lawsuits during the First Interim Fee Period (2.2 for the Ohab Case, also 2.2 for the Colbron case).  At her hourly rate of $250, her total fees charged would be $1,100.00.

- Others.  Other Dickinson professionals recording time on the two Canadian Lawsuits during the First Interim Fee Period were partners M. Reid Estes, Jr. and Autumn L. Gentry and paralegal Pamela L. Pardee.  Mr. Estes is the lead counsel in the Tennessee Case.  Ms. Gentry also is focused on the Tennessee Case.  Their credentials are set forth in the discussion below.  Mr. Estes recorded a total of 0.5 hours on the two Canadian Lawsuits during the First Interim Fee Period, while Ms. Gentry recorded a total of 0.1 hours; in both cases, the services rendered pertained to coordinating the statements/strategies in the Canadian Lawsuits with the statements/strategies in the Tennessee Case.  Mr. Estes' discounted hourly rate is $690, resulting in total fees on the Canadian cases of $345.00.  Ms. Gentry's discounted hourly rate is $615, resulting in total fees on the Canadian Lawsuits of $61.50.  Finally, paralegal Pamela L. Pardee recorded a total of 0.4 hours on the Ohab Case during the First Interim Fee Period.  Her hourly rate is $320, resulting in fees of $128.00.

B.     The Employment Lawsuit in Nashville.   On April 21, 2025, Sloan and F & B filed a lawsuit against Ohab and her company, Toro Natural Labs, styled *Sloan Health Products LLC, et al. v. Patricia Ohab, et al.*, case no. 3:25-cv-00448, United States District Court, Middle District of Tennessee (the "Tennessee Case").   Sloan and F & B alleged that Ohab created Toro Natural Labs, Ltd. ("Toro"), a Canadian limited company, for the purpose of engaging in the same business in which her former employer, Sloan, engaged.   Sloan further alleged that Ohab and Toro, working with Garg, utilized confidential information Ohab obtained while employed with Sloan to identify and solicit business from Sloan's existing customers, and that Ohab's actions began several months prior to the time her employment with Sloan was terminated.[4]   The Complaint alleged that Ohab and Toro violated state and federal trade secrets statutes, engaged in unfair and deceptive trade practices, violated Ohab's non-competition and non-solicitation agreement and violated various fiduciary obligations Ohab owed to Sloan and F & B by converting their trade secrets and other proprietary information.

---

[4] Perhaps not coincidentally, Ohab began competing  with Sloan at about the same time that Garg agreed to his settlement with the FTC in this case.  Ohab was still employed by Sloan and F & B at the time.

12

Ohab and Toro (through Garg) hired Brian Reilly, an attorney licensed in New York and North Carolina (but not Tennessee) to represent them in the Tennessee Case. The Receiver attempted to communicate with Reilly after his appearance to discuss that, as the former *de* facto general counsel for Sloan and F & B who handled, among other things, employment matters for the companies, Reilly was in a position of conflict that precluded him from taking on Ohab and Toro as clients in the Tennessee Case. Reilly, however, ignored these efforts. Sloan and F & B therefore moved to disqualify Reilly in the Tennessee Case. Reilly filed a memorandum opposing the motion to disqualify him. In a Report and Recommendation dated February 13, 2026, the magistrate judge recommended that the motion to disqualify Reilly be denied. The Receiver will not object to the R & R.

Dickinson recorded its time, along with a description of the services it rendered in the Tennessee Case, on invoices. *See* Exhibit "B." Dickinson's services are focused principally on two specific tasks: Preparing the complaint, and litigating the motion to disqualify Reilly. The invoices are summarized as follows:

13

| Invoice Date | Hours | Total Fees |
|---|---|---|
| 03-11-2025 | 25.9 | $17,698.50 |
| 05-12-2025 | 11.6 | 8,004.00 |
| 06-11-2025 | 3.4 | 2,162.00 |
| 08-18-2025 | 68.6 | 44,804.00 |
| 09-30-2025 | 64.2 | 38,985.00 |
| 10-07-2025 | 0.7 | 425.50 |
| 11-07-2025 | 4.4 | 2,346.00 |
| TOTALS | 178.8 | $114,425.00 |

The Dickinson attorneys representing Sloan and F & B in the Tennessee Case are partners M. Reid Estes, Jr. and Autumn L. Gentry.

- <u>M. Reid Estes, Jr</u>. Mr. Estes, the lead counsel in the Tennessee Case, is a 1980 graduate of the University of Tennessee College of Law. He has been a member of the Tennessee Bar since 1980. He is a member (partner) at Dickinson, with a practice focus in business and employment litigation. In addition to the Middle District of Tennessee and the Sixth Circuit Court of Appeals, Mr. Estes is admitted to practice in the United States Supreme Court, Fourth Circuit Court of Appeals, Seventh Circuit Court of Appeals, Eighth Circuit Court of Appeals, District of Colorado, Eastern District of Michigan and the Eastern and Western Districts of Arkansas. He has successfully litigated a broad variety of complex federal and state commercial litigation disputes including business disputes, breach of contract disputes, and labor and employment law issues,

as well as many wage and hour and other class and/or collective actions. In addition, he is a Rule 31 Listed Mediator and a Member of the Tennessee Association of Professional Mediators.

During the First Interim Fee Period Mr. Estes recorded a total of 103.5 hours. His regular hourly rate during 2025 was $850, but in this case he has agreed to reduce his rate to $690. The total fees he seeks therefore is $71,415.00.

- Autumn L. Gentry. Ms. Gentry is a 2000 graduate of the University of Tennessee College of Law, and has been a member of the Tennessee Bar since 2000. She is a member (partner) at Dickinson, with a practice focus in commercial litigation, including employment law. She is admitted to practice in the Middle District of Tennessee, as well as the Sixth Circuit Court of Appeals and the Eighth Circuit Court of Appeals. Like Mr. Estes, she has successfully litigated a broad variety of complex federal and state commercial litigation disputes including business disputes, breach of contract disputes, and labor and employment law issues, as well as many wage and hour and other class and/or collective actions.

During the First Interim Fee Period Ms. Gentry recorded a total of 74.8 hours. Her regular hourly rate during 2025 was $615.00, but

15

in this case she agreed to reduce it to $575.  The total fees she seeks therefore is $43,010.00.

For the Nashville Lawsuit, Dickinson did not utilize the services of associates or paralegals with lower billing rates.

III.    STANDARD FOR AWARDING COMPENSATION

In determining the reasonableness of fees, the Court must calculate the lodestar, which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983).  "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).  Once the Court has calculated the lodestar, it may adjust the fee awarded upward or downward based upon other considerations, including (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment due to the attorney's acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the amount involved and the results obtained; (8) the experience, reputation, and ability of the attorneys; (9) the undesirability of the case; (10) the nature and length of the professional relationship with the client; and (11)

16

awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974); *S.E.C. v. Aquacell Batteries, Inc.*, 2008 WL 276026 (M.D. Fla. 2008); *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).[5]

      A.    <u>The Time and Labor Required</u>. The time and labor required are summarized above and completely described in the attached Exhibits "A" and "B." For the two Canadian Lawsuits, Dickinson recorded a total of 19.9 hours during the First Interim Fee Period and proposes to charge $13,954.00 in fees, which translates into a blended hourly rate of approximately $701.21.[6] Attached as Exhibit "C" is the Declaration of Wendy G. Hulton, addressing the hours recorded in the Canadian Lawsuits.

      For the Tennessee Case, Dickinson recorded a total of 178.8 hours during the First Interim Fee Period and proposes to charge $114,425.00 in fees, which translates into a blended hourly rate of approximately $639.96.[7] Attached as Exhibit "D" is the Declaration of M. Reid Estes, Jr. ("Estes Declaration"), addressing the necessity of the hours

---

[5] Decisions from the former Fifth Circuit Court of Appeals entered prior to September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981).

[6] Section II.A above identifies the total hours, and hourly rates, for each timekeeper.

[7] Section II.B above identifies the total hours, and hourly rates, for each timekeeper.

recorded in the Tennessee Case and his opinion of the reasonableness of the hourly rates charged.

B.    <u>The Novelty and Difficulty of the Question</u>.  The claims brought against Sloan and F & B in the Canadian Lawsuits were in the form of a "cookie cutter" complaint filed by a plaintiff's employment litigation firm.  Dickinson defended these claims ably, but without the need (at this time) for extensive legal research or motions.    The Hulton Declaration speaks further to the novelty and difficulty of the questions.

In the Nashville Lawsuit, Dickinson prepared a standard complaint alleging that Ohab violated her non-competition and non-solicitation agreement, and it included various other counts in the complaint based primarily on state law.  Dickinson also moved to disqualify opposing counsel.  The Estes Declaration speaks further to the novelty and difficulty of the questions, as well as Mr. Estes' opinion of the time necessary to litigate the matter.

C.    <u>The Skill Necessary to Perform the Services Properly</u>. Dickinson's attorneys in the Canadian Lawsuits showed proper restraint and the requisite skill to preclude those lawsuits from going forward.  The Estes Declaration speaks to Mr. Estes' opinion as to the skill necessary to perform the legal services necessary in the Tennessee Case.

D.    The Preclusion of Other Employment.    As a result of this engagement, Dickinson's Tennessee attorneys have been precluded from working on higher hourly rate cases.  In addition, after the retainers totaling $42,000, Dickinson has been required to wait for court approval before being paid, when Dickinson is typically paid on a monthly basis for its services.

E.    The Customary Fee.  On the subject of hourly rates, the Receiver attaches the Declaration of Wendy Hulton and the Affidavit of Stuart Rudner (Exhibits "C" and "E" respectively) to speak to the Toronto market, and in addition to the Declaration of Mr. Estes, the Declarations of Douglas B. Janney, III and Robert E. Boston to speak to the Nashville market rate (Exhibits "F" and "G" respectively).

With respect to the Canadian Lawsuits, Mr. Rudner attests to very substantial experience in the employment law area, and also to substantial familiarity with the Toronto legal market for employment law cases.  Mr. Rudner opines that the hourly rate proposed for Ms. Hulton in the Ontario market is reasonable given her level of experience.  He further opines that the standard rate for an attorney with Ms. Pennington's experience would be between $300 and $400 per hour, and that as a

19

consequence her proposed $250 hourly rate is reasonable in the Ontario legal market.

Regarding the Tennessee Case, Messrs. Janney and Boston both demonstrate substantial experience and expertise in the commercial/employment litigation field.  Both opine that the reduced hourly rates requested by Dickinson are reasonable for the Nashville legal market.  Mr. Janney further testifies that the total amount of time recorded by Dickinson on the Tennessee Case is reasonable.[8]

F.    Whether the Fee is Fixed or Contingent.  The fees requested are not contingent; however, they are subject to this Court's approval prior to being paid.

G.    Time Limitations Imposed by the Client.    No extraordinary consideration need be given this factor.

H.    The Amount Involved and the Results Obtained.  In the Canadian Lawsuits, the Plaintiffs each requested monetary damages of over $1 million, plus punitive damages.  In Nashville, the damage to Sloan and F & B is unliquidated, but could easily be several hundred thousand

---

[8] The Receiver submits that it is impossible to find competent counsel to represent the Receivership Entities for litigation or transactional matters at any lesser rate than is proposed by the Dickinson firm herein.  The Receiver assures the Court that he has tried.

dollars for actual damages, plus punitive and/or exemplary damages, treble damages, and attorney's fees and costs.

I.    The Experience, Reputation and Ability of the Attorneys. Section II above recites the experience, reputation and abilities of each of the Dickinson attorneys who worked on the matters.

J.    The "Undesirability" of the Case.  Other than the retainer fees, Dickinson agreed to wait for Court approval before requiring payment. As a result, other than the retainers, Dickinson has not been paid for any work performed or costs incurred in this matter after being retained in January 2025, when Dickinson is normally paid monthly for services performed at higher hourly rates.  Further, this engagement required counsel to spend a great deal of unbillable time drafting declarations and obtaining declarations from local counsel to support the reasonableness of Dickinson's hourly rates and the time spent on the matter (although the Receiver communicated these points to Dickinson at the commencement of the engagement).

K.    The Nature and Length of the Professional Relationship. Dickinson has not previously represented Sloan or F & B.

L.    Awards in Similar Cases.  It is customary for a court to award a receiver's attorneys the fees they request, particularly where the

attorneys have performed as directed and have requested a reasonable amount.

IV.    EXPENSES

During the First Interim Fee Period Dickinson incurred reimbursable expenses totaling $838.97, as itemized on Exhibits "A" and "B."  Regarding the Canadian Lawsuits, the expenses include costs for paper copies (at 10 cents per page) of $2.10, court filing fees totaling $407.14, and a Terraview fee (similar to PACER) totaling $24.73.  In the Tennessee Case, Dickinson wrote off $12,199.06 in costs for computerized legal research, data hosting, and PACER fees so that Dickinson is only seeking a total of $405.00 for court fees associated with filing the Complaint.

In addition, the federal and provincial governments in Canada levy a sales tax on legal services. The HST (Harmonized Sales Tax) levied upon and paid by Dickinson for the legal services it rendered is $1,870.44.

V.    CONCLUSION

The Receiver seeks an order from the Court awarding Dickinson the following amounts:

|  | Fees | Costs | HST | Total |
|---|---|---|---|---|
| Ontario Case (Ohab) | 10,240.50 | 230.40 | 1,361.21 | $11,832.11 |
| Ontario Case (Colbron) | 3,713.50 | 203.57 | 509.23 | 4,426.30 |
| Tennessee Case | 114,425.00 | 405.00 |  | 114,830.00 |
| TOTAL | $128,379.00 | $838.97 | $1,870.44 | $131,088.41 |

The Receiver also seeks an order from the Court authorizing him to pay Dickinson the amounts awarded herein, after first applying the $42,000 retainer previously paid.

GENERATIVE ARTIFICIAL INTELLIGENCE CERTIFICATION

Generative artificial intelligence was not used in the preparation of this filing. The undersigned certifies that all factual assertions, legal authority, and citations have been independently reviewed and verified for accuracy and accepts full responsibility for the contents of this filing.

## LOCAL RULE 3.01(g) CERTIFICATION

The Receiver certifies that prior to filing this motion he made a reasonable effort to confer with all parties who may be affected by the relief requested herein.  Counsel for all parties have indicated that they do not object to the entry of an order awarding Dickinson the fees and expenses set forth herein, or that they take no position on the requested relief.

*/s/ Mark J. Bernet*

Mark J. Bernet, Receiver
401 E. Jackson Street, Suite 1700
Tampa, Florida  33602
Telephone:  (813) 223-7333
Facsimile:  (813) 218-5495
Email:  mark.bernet@akerman.com
Secondary:  caren.deruiter@akerman.com
Secondary:  sal.papsidero@akerman.com

## DICKINSON'S VERIFICATION

Dickinson certifies that Exhibits "A" and "B" are true and correct copies of invoices generated by Dickinson for services rendered by Dickinson during the First Interim Fee Period, and that Exhibits "A" and "B" accurately reflect the services rendered by Dickinson during the First Interim Fee Period and the amount of time spent by Dickinson performing those services.

*/s/ M. Reid Estes, III*

24

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served by CM/ECF and via e-mail to Darren Lubetzky, Esquire, e-mail dlubetzky@ftc.gov, Vikram Jagadish, Esquire, e-mail vjagadish@ftc.gov, and via e-mail to Stephen R. Freeland, Esquire, sfreeland@grsm.com; Jim Felman, Esquire, e-mail JFelman@kmf-law.com; Michael Carey, Esquire, mcarey@careyomalley.com; Eric Forni, Esquire, e-mail Eric.forni@us.dlapiper.com; David Stier, Esquire, e-mail David.Stier@us.dlapiper.com and Eric S. Rosen, Esquire, e-mail erosen@dynamisllp.com, this 18th day of March, 2026.

/s/ Mark J. Bernet
Mark J. Bernet, Receiver

85851330;1